BANCROFT TRUST COMPANY *vs.* ELLEN J. CANANE.

Worcester.   January 10, 1930. — April 26, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON & FIELD, JJ.

*Equity Jurisdiction,* To enjoin action at law, Multiplicity of suits, Cir-
cuity of actions. *Equity Pleading and Practice,* Demurrer, Bill. *Prac-
tice, Civil,* Equitable defence. *Writ of Entry.*

The bill, in a suit in equity to restrain the defendant from prosecuting a
writ of entry and for an adjudication of the validity of certain mort-
gages, contained allegations that, as a culmination of certain finan-
cial transactions between the plaintiff and the defendant and others,
the plaintiff paid certain mortgages upon land of the defendant and
the defendant gave the plaintiff two new mortgages upon that land;
that subsequently, for breach of condition of his mortgages, the
plaintiff made entry to foreclose the first mortgage; that the de-
fendant, claiming that the mortgages were invalid, then brought a
writ of entry in the Land Court for possession of the land, in which
he attached the plaintiff's property and caused a *lis pendens* notice
to be filed in the registry of deeds; that a foreclosure sale under the
mortgage thereafter was held and the land sold to the plaintiff; that
the defendant had ratified the mortgages; that they were valid; that
many of the issues raised by the defendant could not be adjudicated
in the proceedings in the Land Court; that the plaintiff's right to
possession after the foreclosure sale and his right to be subrogated to
the rights of the holders of the mortgages paid by him could not be
adjudicated in those proceedings; that, if the defendant should prevail
in the writ of entry, that would not be an adjudication of the validity
of the plaintiff's mortgages and, furthermore, the plaintiff still could
foreclose his second mortgage; that, if the defendant should not
prevail in the writ of entry, he intended to institute a suit in equity
against the plaintiff for possession and an accounting; that the *lis pen-
dens* notice was a cloud on the plaintiff's title; and that the plaintiff
offered to permit the adjudication in the suit of any claim affecting
the validity of the mortgages and to execute to the defendant a deed
of the land upon payment of the amounts secured by the two mort-
gages. A demurrer by the defendants was sustained. *Held,* that

(1) Upon the demurrer, the allegations of fact contained in the bill
must be taken to be true;

(2) The only question which could be settled by the proceedings
in the Land Court was the defendant's right of possession as of the
date of the writ of entry; and, in view of all the circumstances as
shown by the allegations in the bill, it was apparent that those pro-
ceedings could not settle, finally and completely, all the rights of the
plaintiff and of the defendant as to the subject matter;

(3) In such circumstances, a court of equity should intervene to settle all those rights in one proceeding, thus avoiding multiplicity of proceedings and circuity of actions;

(4) Since the averments in the bill showed that the plaintiff had equitable rights which he could not assert in the writ of entry, objection to the bill properly could not be taken on the ground that it also disclosed legal defences to the writ of entry;

(5) G. L. c. 231, § 31, was not applicable, since the equitable defences which the plaintiff might have asserted in the writ of entry would not have been such as would entitle him to be absolutely and unconditionally relieved; furthermore, that statute did not bar the plaintiff from maintaining the suit as an alternative to his right to assert equitable defences in the writ of entry;

(6) The allegations of fact in the bill being assumed upon demurrer to be true, a contention by the defendant, that the plaintiff did not come into court with clean hands, could not be sustained;

(7) The circumstance, that the defendant had a right to trial by jury in the writ of entry and not in the suit, was not a sufficient ground to bar the suit;

(8) Certain allegations in the bill relating to the financial transactions between the plaintiff, defendant and others, and an allegation that the defendant was financially irresponsible, could not be said to be immaterial;

(9) The suit was not barred by G. L. c. 237, §§ 16, 17;

(10) The demurrer was sustained erroneously.

BILL IN EQUITY, filed in the Superior Court on August 7, 1929, to restrain the defendant from prosecuting a writ of entry, for an accounting and for an adjudication as to the validity of certain mortgages given to the plaintiff by the defendant.

The bill is described in the opinion. The defendant demurred. The demurrer was heard by *Whiting*, J., by whose order it was sustained and a final decree was entered dismissing the bill. The plaintiff appealed.

*J. A. Crotty*, (*G. H. Mason* with him,) for the plaintiff.

*D. Burstein*, for the defendant.

CARROLL, J. The plaintiff was the holder of two real estate mortgages given by the defendant. Each mortgage was in the sum of $20,000 and covered the same tract of land; they were dated October 3, 1927. On January 1, 1929, the plaintiff entered to foreclose under the first mortgage, and on March 10, 1929, began foreclosure proceedings under the power of sale in this mortgage, fixing the time of sale as April 2, 1929. On March 26, 1929, the defendant

brought a writ of entry in the Land Court to recover the premises described in the mortgage. The plaintiff completed the foreclosure proceedings and the property was sold to the plaintiff. In August, 1929, the plaintiff brought the present suit in equity. The defendant's demurrer to the plaintiff's bill was sustained, and the plaintiff appealed from a final decree dismissing the bill.

The plaintiff seeks by this suit in equity to restrain the defendant from prosecuting the writ of entry. It asks for an accounting and that the validity of the mortgages and the sum due thereon be adjudicated. In the writ of entry specifications were filed by the demandant, the defendant here; these specifications assert that the mortgages and notes given to the Bancroft Trust Company were illegal because they were procured by the extortion, duress, threats of criminal prosecution, and in condonation of an alleged crime, by certain officers of the trust company.

After describing the mortgages and the notes secured by the mortgages, the bill alleges that when the mortgages were executed the real estate was subject to certain mortgages described in the bill including a mortgage to one Donoghue who was acting for the plaintiff.

It is further alleged that the defendant and members of her family were interested in a corporation known as the Canane Motor Company, hereinafter called the motor company, to which the plaintiff had given credit upon indorsements of its commercial paper by the defendant's two sons; that the mortgage to Donoghue was given by the defendant as security for the money lent and the accommodations the plaintiff had granted and as security for the future accommodations to the motor company and to the two sons of the defendant; that in August, 1927, Rozefsky, the holder of the fourth mortgage, was about to foreclose; that as a result of conferences between officers of the plaintiff and the defendant the defendant agreed to a loan of $40,000 secured by mortgages "out of which it [the plaintiff] was to pay off the mortgages then existing against the property and fix the extent of her liability for the moneys and accommodations which had been furnished" to the

motor company and to the defendant's sons; that thereupon the notes and mortgages were executed; that at the defendant's request and according to her direction, the plaintiff paid out the $40,000.

It is also stated in the bill that this sum of $40,000 was used in paying the mortgages to the People's Savings Bank and to Rozefsky; that the plaintiff delivered to the defendant and transferred by indorsement certain notes of the motor company indorsed by the defendant's sons; and credited itself with the sum of $13,424.55, the amount due on certain promissory notes; that the balance of the $40,000 amounting to $3,341.65 was applied according to the directions of the defendant in reduction of the amount due the plaintiff upon notes of the motor company indorsed by the defendant's two sons; that discharges of the mortgages of the People's Savings Bank, Rozefsky and Donoghue were recorded in the registry of deeds and delivered to the defendant; that the notes, mortgages and other evidences of debt were delivered to the defendant.

It is alleged that the two mortgages to the plaintiff were duly recorded October 3, 1927; that on October 4 of that year all of the shares of stock of the motor company, except two, were transferred to the defendant; that the defendant at this time and for a long time prior thereto was an "undisclosed partner or the undisclosed principal of the Canane Motor Company" and was directly benefited by the discharge of the mortgages on her property, by the loans to the motor company, and by the discharge of its obligations to the plaintiff; that the interest due on the two mortgages given to the plaintiff was paid on January 1, 1928, on April 1, 1928, and in part on July 1, 1928; that on January 1, 1929, because of the defendant's default, the plaintiff made an entry and took possession to foreclose its mortgage on the premises described in the first of the two mortgages; that the plaintiff is in possession and received rents and profits and incurred obligations; that in March, 1929, the plaintiff began foreclosure proceedings under the power of sale in the first mortgage and thereunder sold the property on April 2, 1929, to the plaintiff for the sum of $12,000;

that a deed of foreclosure was duly recorded and the plaintiff is in possession of the property.

The bill further alleges that the defendant has at no time offered to pay the interest due on the taxes, nor has she in any way "cured the breach of the conditions of her mortgage"; that on March 26, 1929, the defendant caused to issue from the Land Court a writ of entry against the plaintiff, alleging she had a right of entry on the premises held by the plaintiff; that she caused an attachment of $10,000 in connection with the writ of entry to be made against the plaintiff's property and caused notice of the pendency of her writ of entry to be recorded in the registry of deeds; that no claim of duress or other claim affecting the validity of the mortgage under which the plaintiff is in possession or the debt secured by it was made by the defendant "until shortly before the issuance of her said writ of entry" and no disaffirmance of the mortgages or notes was ever made by the defendant before the writ of entry was brought; that no tender was made or offer to restore the moneys paid out for her benefit.

The bill states that the plaintiff denies that any duress or extortion was used or that any condonation of crime was practised; that the defendant affirmed and ratified the validity of her mortgages; that she is financially irresponsible and has no property that can be attached; that the proceedings in the Land Court cannot adjudicate the "issues which she has raised or alleged in her claim"; that these proceedings in the Land Court cannot settle the question of the plaintiff's right to possession on and after April 3, 1929, the date of the foreclosure deed, nor the extent to which the plaintiff is entitled to be subrogated to the rights of the holders of the mortgages paid by the plaintiff; that the Land Court cannot require as a condition precedent to the entry of judgment payment or tender of payment by the defendant of the sum due the plaintiff in justice and equity.

It is also alleged that if the defendant should prevail in her writ of entry this would not be an adjudication in equity of the validity of the mortgage under which the plaintiff

claims title by foreclosure; that the notice of *lis pendens* is a cloud on the plaintiff's title; that if the defendant does not prevail in the Land Court she intends to bring a suit in equity to redeem and demand an accounting from the plaintiff as mortgagee in possession from January 1 to March 26, 1929, and thereafter; that the Land Court proceedings cannot settle the rights of the plaintiff under its second mortgage for $20,000; that even if the defendant prevails in the Land Court the plaintiff can take possession and sell under the power in the second mortgage, and can proceed to collect the sums due it under the two notes which the mortgages secure; that numerous actions and suits "are imminent and all relate to the respective rights and obligations of the transaction entered into on October 3, 1927, for which your plaintiff has no complete and adequate remedy at law"; that the prosecution of the writ of entry is an attempt to rescind her mortgages and escape the making of restitution, and to circumvent "her rights and duties" under G. L. c. 244. The bill also contains an offer to permit the defendant in this proceeding to have adjudicated any claim affecting the validity of the mortgage or mortgages and to execute to the defendant a deed of the premises upon payment of the sums due the plaintiff and secured by the two mortgages.

In the consideration of the questions raised by the defendant's demurrer the allegations of the bill must be taken to be true. *Granara* v. *Italian Catholic Cemetery Association*, 218 Mass. 387, 392. *Willett* v. *Herrick*, 242 Mass. 471, 477. Without repeating the averments of the plaintiff's bill, it appears that the proceedings in the Land Court cannot finally and completely settle all the rights of the parties. The only question to be settled by the writ of entry is the defendant's right to possession as of the date of that writ. Neither the validity of the notes and the second mortgage nor the force and effect of the Donoghue mortgage can be determined by the writ of entry. The question of subrogation will also be left undecided if the defendant in the equity suit prevails in the writ of entry. The plaintiff avers that many of the issues which the

defendant "has raised or alleged in her claim" cannot be adjudicated in an appropriate way in the Land Court; that, even if the defendant should prevail under the writ of entry, her judgment for possession would not be an adjudication in equity of the validity of the mortgage "under which . . . plaintiff now claims title by foreclosure" by sale under the power at a date subsequent to the writ of entry; that the notice of *lis pendens* on record in the registry of deeds would be a cloud on its title; and that if the defendant here should not prevail in the Land Court, she intends to bring a suit in equity to redeem and also a suit in equity for an accounting. These allegations must be taken to be true in the consideration of the demurrer. They show that several important questions are involved which cannot be completely disposed of by the action at law. Numerous allegations of the plaintiff indicate that further litigation will be necessary, that suits in equity are to be brought; that all these matters in controversy can be fully decided in a suit in equity, and that multiplicity of suits will be prevented, circuity of action avoided, and an adequate remedy afforded. It is well recognized that equity will intervene under such conditions. *Carr* v. *Silloway,* 105 Mass. 543. *Boston & Maine Railroad* v. *Sullivan,* 177 Mass. 230. *Harmon* v. *Weston,* 215 Mass. 242. *Homrich* v. *Robinson,* 221 Mass. 308. See *Payson* v. *Lamson,* 134 Mass. 593, 597–598; *Smith* v. *Smith,* 148 Mass. 1.

While it is well settled that a suit in equity will not lie to restrain an action at law to which there is a perfect defence, *Corey* v. *Griffin,* 181 Mass. 229, if the plaintiff has equitable rights of which he cannot avail himself in an action at law equity will take jurisdiction. *Ross* v. *Harper,* 99 Mass. 175, 176. *Noyes* v. *Noyes,* 233 Mass. 55. See *Spaulding* v. *Backus,* 122 Mass. 553. It has also been held when such equitable rights exist it is no objection to a suit in equity that the bill also discloses legal defences to the action at law. *Bomeisler* v. *Forster,* 154 N. Y. 229, 237–238. *Lord Tredegar* v. *Windus,* L. R. 19 Eq. 607, 614–615.

If the defendant should fail to recover in her action at law, on the ground that her remedy was in equity, see *Parsons* v. *Welles,* 17 Mass. 419, *New England Jewelry Co.* v. *Merriam,* 2 Allen, 390, *Brown* v. *Smith,* 116 Mass. 108, *Brouillard* v. *Stimpson,* 201 Mass. 236; or because the transaction complained of was ratified or the consideration not returned, see *Webb* v. *Lothrop,* 224 Mass. 103; or if she did not prevail in that action for any reason, all the rights of the parties would not be finally settled. A decision for the defendant in her action in the Land Court would not stop further litigation, for if unsuccessful in that court she intends, according to the averments in the bill, to begin proceedings in equity. The prevention of vexatious litigation even as between two parties only is a well established branch of equity jurisprudence. Story, Equity Jurisprudence (14th ed.) § 1195. Pomeroy, Equity Jurisprudence (4th ed.) § 1362.

If the defendant here should recover in the real action, see *Marvel* v. *Cobb,* 200 Mass. 293, this determination would not according to the bill adjudicate other matters in dispute, including the validity of the second mortgage, and the plaintiff's right to enter on the premises and foreclose the mortgage and proceed to collect the notes secured by the mortgages.

As a writ of entry deals only with the state of the title as of the date of the writ, *Tainter* v. *Hemenway,* 7 Cush. 573, *Curtis* v. *Francis,* 9 Cush. 427, 442–444, *Hooper* v. *Bridgewater,* 102 Mass. 512, and as it is no defence to the action that the mortgagee has entered to foreclose since the date of the writ, *Weston* v. *Spiller,* 2 Allen, 125, the rights of the plaintiff under the sale by virtue of the power in the mortgage, subsequent to the date of writ, would not therefore be adjudicated by the proceedings in the Land Court. Nor would the validity of the second mortgage be involved; nor would the other questions raised by the bill be passed on or decided.

Under G. L. c. 231, § 31, equitable defences may be alleged to an action at law. This statute applies to a writ of entry as well as to other actions at law. *Nazro* v. *Long,*

179 Mass. 451, 455. But the equitable defences which may be relied on in such an action are those only which entitle one to be absolutely and unconditionally relieved; a conditional judgment could not be entered. *Mason* v. *Mason*, 140 Mass. 63, 65. *Sherman* v. *Galbraith*, 141 Mass. 440. Furthermore, it has been decided that the statute permitting equitable defences in an action at law does not prevent a party from proceeding in equity to establish his rights; he has an election either to assert his equitable rights by way of answer to the action or to make them the basis of a suit in equity. *New York, New Haven & Hartford Railroad* v. *Martin*, 158 Mass. 313, 315. *Cook* v. *Richardson*, 178 Mass. 125, 128. *Gargano* v. *Pope*, 184 Mass. 571. *J. P. Eustis Manuf. Co.* v. *Saco Brick Co.* 198 Mass. 212.

The defendant contends that the plaintiff does not come into court with clean hands and therefore is not entitled to relief in equity. We are, however, considering the plaintiff's bill on demurrer. For the purposes of this decision its allegations are true. It is alleged that the defendant ratified the transaction and it is further alleged that no duress, extortion or condonation of crime was practised on the defendant. This contention of the defendant is not to be sustained.

Assuming that the defendant has a right to a trial by jury in the real action, G. L. c. 185, § 15, and that in equity a jury trial of issues is a matter of discretion, *Dorr* v. *Tremont National Bank*, 128 Mass. 349, *Parker* v. *Simpson*, 180 Mass. 334, this does not afford sufficient ground for denying the plaintiff relief in equity. If this contention of the defendant were sound, no action at law where a jury trial is demanded could be restrained, no matter how unjust or inequitable it would be to allow the action at law to proceed. The plaintiff comes into court contending that it has a right in equity to be heard and to have stayed the proceedings at law; it cannot be deprived of this right merely because the defendant has brought an action upon which she is of right entitled to a jury trial.

One of the grounds of demurrer is that the bill contains

"allegations with reference to immaterial and irrelevant matters." The relations of the defendant with the motor company and the financial interest of herself and family in that company may be of material importance, the Donoghue mortgage having been given by the defendant to secure the plaintiff for its advances to the motor company and to members of her family. Circuity of action might therefore be avoided by the proceeding in equity. The allegation of the defendant's financial irresponsibility cannot be said to be immaterial. See *Clark* v. *Flint,* 22 Pick. 231, 238. G. L. c. 237, §§ 16, 17, relating to the recovery of the value of buildings and improvements in a writ of entry, does not prevent the plaintiff from proceeding by this suit in equity.

The plaintiff's bill in equity, as we construe it, contains sufficient averments to show that the remedy at law is inadequate; that full and complete relief cannot be given in such an action; and that the ends of justice cannot be supplied by a purely legal remedy. In consideration of the many allegations in the bill and the questions presented which are necessary to be passed on, equity has jurisdiction. The matters in dispute should be settled in that jurisdiction and the case heard on its merits in that tribunal.

The decree is to be reversed, and a decree is to be entered overruling the demurrer.

*Ordered accordingly.*